v. Marius Lamont Maye. Good morning, your honors. My name is Robert Hendricks and I'm appearing here today on behalf of the defendant appellant Marius Maye. I am joined at council table by lead counsel, assistant federal defender Tracy Haynes. At sentencing, the government bore the burden of proving by a preponderance of the evidence that Mr. Maye was imprisoned on a North Carolina sentence beyond January 11, 2004. To meet its burden, the government relied upon a letter indicating a projected release date of August 9, 2004. Based on that projection and the calculation of time credits, for which there's a variety of evidence. Could I ask a fundamental question? Is this a question of fact that the judge had to decide for sentencing or is this a question of law, North Carolina law? So, the question of the release date is ultimately going to be a question of fact. Because what we're asking is not today whether Mr. Maye is entitled to credit under North Carolina law in 2003. We're asking as the law was understood in 2003, is there a possibility Mr. Maye could have received credit that is not reflected in the government's documents? Well, that seems to be taking on a fairly demanding burden for you, right? Because the question here is, could a reasonable judge have decided, if it's a question of fact, whether his North Carolina sentence extended past, not to August necessarily, but just past January, the mid-date and early January. Could a reasonable judge have found, by a preponderance of the evidence, that it's more likely than not that he was still serving his North Carolina sentence into late January? And you're saying that, no, a reasonable judge couldn't find that. So zooming out and getting to your question, this case is about how a court conducts clear error review in the context of a release date. And we would submit that it's similar to how the court conducts clear error review in the quantity-based calculation realm. And so in that area, a court's going to commit clear error if it bases a calculation upon conjecture or extraction. Well, but this isn't so much conjecture. There are facts. Now, I take your point that the letter is saying this is what we think his release date will be. But that means that a North Carolina official doing a calculation, lying behind that is evidently some kind of calculation, that if Connecticut is going to release this gentleman because for whatever reason his Connecticut sentence ends, he's released on parole, he's pardoned or his sentence is commuted in some way by Connecticut, you have to send him back to us because he owes us time until August. So somebody made that calculation in North Carolina. That seems to me not a trivial fact, especially when the calculations that the government presented to the court seem to be perfectly reasonable calculations of how this would have formed. It could have been a different thing. I mean, you know, suppose it's, well, let's suppose that it could have been a different possibility. There are a couple of ways in which one could interpret this convoluted record of his bouncing back and forth between Connecticut and North Carolina. But why isn't it a perfectly reasonable interpretation of the record that the probation person or prison person who wrote that letter to Connecticut was right? So on this point, Your Honor, I think the court's reasoning in Shinobi and progeny is instructive. So there you have a quantity that the court approves of by preponderance of the evidence. You have 427 grams of heroin. And the government had proven that drug quantity at sentencing by taking four balloons that had passed through the defendant's body and extrapolating out to the full set of 103 balloons to arrive at 427. What the government then did is they multiplied that by eight for the eight trips that the defendant had taken. We don't know anything about those eight trips. I mean, we don't know how many balloons or how much drug. It's guesswork what happened there. But this is not guesswork. This is applying. And it may be erroneous. That's why I asked if this is a question of law, that we have to go into the weeds of North Carolina law and figure out that we agree de novo that this is the correct calculation. But if it's a finding of fact, then we're looking at possibly disputable inferences from the record. And it seems to me that these are pretty straightforward assumptions about the record. That seems to be very different than just guessing at, you know, what's ballpark or whatever. This is, you know, we know when all the actual facts are undisputed, right, about the chronology. About the chronology, correct. Undisputed. So unless we're talking about a question of law, the question is just based on what limited knowledge we have about the law, this looks like a perfectly reasonable calculation. And guess what? It's actually the same calculation almost to the day. It's like it may be a day off at most of what the North Carolina authorities themselves said was the correct calculation. Two points in response to that, Your Honor. I do think there is a question of law baked into this question of fact. So you have the question of fact of whether the release date, when he was actually released. But there is the question of North Carolina law that as the law stood in 2003, it was not clear whether he could have received this time credit. It very well is possible as the law stood in 2003 in North Carolina as their state courts interpreted it, and as a federal court sitting in jurisdiction in North Carolina interpreted their law, that he might have had a right to this credit. And I think a part of the problem — Well, I guess he might have. A lot of things might be true. But if it's a question of fact, the question is just what is more likely than not. Now, if you're going to tell me it's a question of law, that becomes something different. If we have to actually decide as if we were a North Carolina appellate court facing a claim offered sometime in December of the previous year by Mr. May, hey, I'm entitled to get out now. And we have to ask ourselves, what is the correct interpretation of North Carolina law? Is he entitled to get out? If that's the story, then we've got — I mean, I'm not sure what the answer is. I am sure — I don't think we want to do that kind of thing for this purpose. But that would be one kind of argument. But if we're just trying to decide what is more likely than not the correct interpretation of North Carolina law, why isn't that good enough? I think part of the problem here, Your Honor, is there's a gap in the evidence. So we have the detainer letter, which is the projected release date. But there's also evidence in the record in the form of the pretrial credits calculated by his pretrial custodian, Pitt County, that the time credits baked into the detainer letter are incorrect. But going further, on the face — I'm sorry. I don't want to interrupt. Continue with your answer. Then I'll ask the question. On the face of the detainer letter is reference to the interstate agreement on detainers, as well as in the PSR, there's reference to a transfer from Connecticut back to North Carolina back to Connecticut. So there is an understanding, as well as Mr. May's testimony at sentencing, there is an understanding that an extradition happened here, that there was a waiver of extradition. And the government and the court appear in the transcript to credit the fact that he did waive extradition. They simply dispute the fact that he's entitled to time credit because of that. Is it the gap time argument? So it's the argument, Your Honor, that what the government needed to do here is to fill the gap. They needed to provide a firmer foundation for their extrapolation. Let me ask you a hypothetical. I mean, suppose — I mean, the Connecticut authorities are sitting there. They've got Mr. May in their custody. And as it happens, they're going to have him until September, right? But suppose there was some problem with the Connecticut thing, or he qualified for some early release program or something. And in March of — whatever year we're talking about, I forget — in March, he ends his Connecticut sentence. What the logical assumption is is going to happen, they're going to look at this letter and they're going to say, yeah, well, you're released, but you're released to the custody of North Carolina. He goes back to North Carolina and he continues to serve his sentence in North Carolina. Would you be able to make the argument now that, in fact, as a matter of law, he shouldn't have been serving in North Carolina? They got it wrong. And if they did keep him until August, he wasn't legally serving his North Carolina sentence into August, because the correct calculation, he should have gotten out in December from his North Carolina sentence, and therefore he's only in Category 4. Is that an argument that you would be able to make, you think? I think it is possible, Your Honor. And so the theory — But of course, that would suggest that it is a question of law, not a question of fact, because, in fact, he was held by North Carolina, on my hypothetical, on this charge. It was just he was wrongfully detained. But as a matter of law, he should have been released, and therefore this particular sentence shouldn't count. Yes, Your Honor, I think that's correct. But that's not the argument you're making, that it's a question of law. You're conceding that it is a question of fact, whether he was serving his North Carolina sentence concurrently with his Connecticut sentence into sometime after January whatever. I think it's a question of law as to whether he was actually entitled to that credit. But the problem with the record as it is, is there is reference to extradition throughout the record. And the interstate agreement on detainers comes with a raft of paperwork. This was paperwork that was readily attainable by the government. It includes the date of the detainer, the date of the waiver of extradition. It contains... With regard to your arguments about these potential credits, you mentioned that a certain number of days with regard to pre-trial detention, which is 119, something like that, which I don't think gets you over the hurdle of being past the January 11th date, but then this argument about additional time even beyond the pre-trial detention, perhaps based on the detainers, that doesn't come up until your reply, if I'm correct, is that right? So the argument is that... So even taking the 119 days that's credited, or taking the 180 days in the Pitt County document, based on Mr. May's testimony that he waived extradition, it is possible that he was entitled to further time credit. And the only way that we would know that... The question is, simpler maybe, is was the argument that is made in the reply brief made in your principal brief? Was it, more importantly, made to the district court, or is that a new argument in the reply brief? We would say, both in the transcript and in the opening brief, our argument is that the waiver of extradition, and this is clear throughout Mr. May's statements at sentencing, as well as in Judge Williams' reasoning at sentencing, that the waiver of extradition, we were contending he was entitled to additional time credits on the basis of that waiver of extradition. Could I ask one last question for me, anyway? In what sane world would anybody care? In other words, I understand that the guidelines want to make some mechanical, mathematical estimate of the seriousness of someone's criminal record. I certainly understand that they want to have some kind of cutoff, that if somebody did something 40 years ago, that shouldn't count against him. I understand all of that. But if you look at Mr. May's actual criminal record, which is essentially continuous from the time he's 16 until quite recently, that he's either in jail or in the process of committing some other crime, it's a little hard for me to fathom how a judge could rationally be influenced by whether he falls into Category 4 or Category 5, all based on whether he should have gotten some extra credit against his North Carolina sentence. Because surely this is not a case in which we're looking back and saying, oh, that should not be held against him anymore. We're looking at a whole record of continuous violations. I just, you know, thank God that we are no longer in a world of mandatory guidelines where that kind of distinction could mean that the guy serves an extra year in jail. But is there any possible reason to think that the judge said, oh, well, I, you know, if he was in custody under the North Carolina sentence, whoa, I'm going to give him X months. But if it turns out he wasn't, well, different guy, different story, different sentence. I mean, we're, you know, how, I guess the question is, how, why should we be asking district judges to make a determination as a matter of North Carolina law about how many days of credit should he have gotten on this sentence? What possible difference can that make to his, what kind of sentence he should get? I think there's two points to that, Your Honor. I think specific to this case, it's clear from the transcript at sentencing that Judge Williams was imposing a guideline sentence. The only reason he ended up getting 72 months was because of seven months in pretrial confinement that were on a sealed docket. He was going to get a guideline sentence, most likely. And so our contention is with a different sentencing range, a different initial benchmark, a different starting point. But it's sort of a funny guideline sentence, right? It's neither the top. If you add seven months to his actual sentence, that gets you to neither the top or the bottom of the guideline range. And we're in the middle, right? It gets you to a point that happens to be within that guideline. Yes, Your Honor. But I think zooming out, this determination of the release date and specifically the operation of the interstate agreement on detainers or these complicated time credit questions, one, they don't come up very often. And so the burden is not something that the government is going to have to navigate in every single case. This is not something a judge is going to have to navigate in every single case. Even looking back on the last 40 years of case law in the Second Circuit, it's not. Why should any judge have to do it? Why should we have to do it? I mean, you're not actually telling me, it seems to me, that as a matter of law, this is a no-brainer. We do this work and you do the math, and it absolutely comes out that as a matter of North Carolina sentence, beyond January, you're saying it's mostly kind of a question of fact and there's at least some possibility that that could be the case and therefore the district court didn't do a good enough job of fact-finding. At the end of the day, this release date determination is always going to be worth three points. And so that's going to mean the difference between one or two criminal history categories and sometimes the application is a zero-point offender. So, for example, if we're talking an offense level of 22, like Mr. May, and someone is in criminal history category two, because they have a three-point conviction that falls within the look-back, you take that away, they may not qualify for a zero-point offender. So their guideline range goes from 46 to 57 months to 33 to 41. That's a 33% shape. But as you go further down... Which is insane, isn't it? I mean, it's just insane that this particular difference should make that much difference in sentencing, which is just a problem with the guidelines world. I agree, John. But in that case, in that case, you'd be making all kinds of arguments about how, whichever way this falls, it's not really rational to hold this one more than 15-year-old offense against him to that degree. But here we've got a very different record and it seems to me, I'm just having trouble understanding how a rational judge would say, this determines, you know, my sentence. But, all right, I mean, I understand the point, but you're still not saying that this is a question of North Carolina law on which we have de novo review. I do think, Your Honor, if we had more information, this would be a question of North Carolina law. The problem is, is the government did not provide that information. There is a raft of information about when he waived detainer, or when he waived extradition, which would have given us the information we needed to know, are we talking about the 82 days in pretrial confinement? Are we talking about the 180 days that North Carolina waited to come and get him from custody? Are we talking about the 110 days from the date of the expiration of the Interstate Agreement of Detainers Act, through the time he's actually transferred? What time are we actually talking about? And it was the government's burden to provide that information. Otherwise, we're just acting based on extrapolation from a projected release date. It's just like the 427 grams, and multiplying by eight, we're taking a projected release date with inconsistencies in the time credit and with no information about extradition, despite testimony in the record and information in the PSR that there was extradition here, and the possibility under North Carolina law that you may be entitled to credit for a waiver of extradition. Okay. I think we have your position. Thank you. Good morning, and may it please the Court. My name is Brendan Keefe. I represent the government in this appeal. This Court should affirm the judgment of the District Court because the District Court properly found, by preponderance of the evidence, that Mr. May was still serving his North Carolina sentence into the 15-year look-back period. And as such, the Court properly attributed three criminal history points to the criminal history calculation. Can you tell me why neither party was able to produce a definitive record for North Carolina? I mean, that was your burden, right? You're the one having to prove to a District Court a fact that would increase Mr. May's sentence. Correct. Well, there's several answers. The first answer is the Court may have noticed the government filed its sentencing memo three months before the sentencing, three months before the defendant filed it. That is because the sentencing kept getting moved, and the government was still ordered by the Court to file its sentencing memo on the day that it ended up filing it. Coincidentally, there is a motion to continue sentencing on the same day that the government filed its sentencing memo. The defendant did not object to anything in the PSR. There was no objection to the PSR with respect to the defendant's criminal history. No, I'm not, I'm not, I mean, are you sitting here representing us today that the state doesn't maintain the record, like that North Carolina didn't have something more definitive? I'm sorry, Your Honor? Are you representing today that North Carolina didn't have something more definitive? No, just to answer the Court's prior question, it was, the issue of this criminal history point calculation was not raised until the defendant filed their sentencing memo, which was five days before sentencing. And in that memo, they didn't raise gap credits or the IAD at all. That argument was not raised until the reply brief. I'm, I'm a little disappointed, given you're the government, you've got resources, you were the one saying to a district court a fact that would increase Mr. May's sentence, and this was not something that you all chased down. I mean, this, we're here because somebody couldn't get something more definitive. In the government's defense, Your Honor, this argument was not raised until the defendant's reply brief, which was only five days. Or put another way, you thought you had enough evidence. You thought this was the right calculation. Exactly. And at least the argument that is now the most persuasive, perhaps, argument, not only didn't get raised until the reply brief in the Court of Appeals, it certainly didn't get raised in terms then. So there was no reason to think there was something missing at that point. But at the same time, why isn't this a question of law? Why isn't this a question of North Carolina law? Not a question of fact. The question is, was he legally to be considered as serving his North Carolina sentence during some or all of the period when he was in Connecticut? That seems to me a question that could easily arise under other circumstances, not ones involving sentencing guidelines, but like in more important contexts, like am I allowed to get out of jail now, where a North Carolina court would be faced with the question, okay, when, what of the various times he spent in jails and prisons in North Carolina and Connecticut bouncing back and forth, how much of that counts against his sentence? And then they determine what the legal effect of these various events was. Why is that not the question before us? Your Honor, because the question is a matter of calculation. It's whether the North Carolina sentence that the defendant was serving beginning October 8, 2003 extended past January 10, 2004. And it's a matter of calculation. So he received a sentence of 11 to 14 months. He received 119 days of time served credit, which is approximately four months. You subtract four months from 11 to 14, and the court is left with 7 to 10. Either one of those bookends gets you well past the January. Well past. So if you look at the record that was there before the district court, and granted that's the record the government made, but it's a pretty reasonable record. It's a pretty complete record as far as any of the legal issues that were put to the district court. It seems way more likely than not that the district court got the correct answer. It's only if you then inject a new legal argument about the interstate agreement on detainers that you say, hmm, if that's the law in North Carolina, then we really have to go and dig out some more facts. And is that sort of where we are? Your Honor, with respect to the GAP argument, I'd like to make a few points. First is that, as we've been discussing, it was not raised in the objection to the PSR. It was not raised in the defendant's sentencing memo. It was not raised at the sentencing hearing. It was not raised in their opening appellate brief. It was only raised most recently in their reply brief. In other words, they waived it down below, and they waived it here. It has been waived twice. Because it's been waived twice, if the court were to consider it, it would be under a different standard of review. It would be the plain error standard of review. And I apologize to the court for not briefing this, but because it was raised in the reply brief, I didn't have an opportunity to brief it. But there would be a prong of that plain error review where this error has to be obvious. And I think the court cannot find that raising the IAD and doing the calculation, which is a very intricate and involved analysis, is an obvious error. So I think even if the court reaches it, which it should not because it was waived, they could not find that this error was obvious. Moreover, if the court accepts it, even if correct, the defendant's calculations would not have Mr. May leaving prison before January 11, 2004. I have some calculations here. But if you take the 14-month day and you take all the time calculated by the defendant, which is approximately 420 days, which is 14 months, minus 229 days, which is the 110 plus the 180, Mr. May would leave prison on April 2004, which of course is past the January... We'd also have some other legal issues about North Carolina law that I don't think anybody's really talked about, which is... And both sides are sort of saying, well, if you take the bottom of 11 to 14, or you take the top of 11 to 14, here's how these things come out. But how would North Carolina actually treat that? What does a sentence of 11 to 14 months mean under North Carolina law? Does that mean that you're presumptively going to be released at 11 months unless you lost some good time credit or something like that? Or does that mean there's a parole hearing that happens at 11 months and you may or may not be continued for the whole 14? We don't know anything about any of that. Correct. None of that was raised at any point during this process, Your Honor. Yeah, everyone's been sort of saying, we win either way, whether it's 11 or 14, based on various experts' calculations of one kind or another. But it's not obvious to me how we should even be making that calculation. Your Honor, that brings me to another point with respect to the IAD. The defendant cites to Article III in their brief. And the IAD is made up of, I think, nine articles. So Article III is one of several other articles. There are two ways within the IAD to initiate inmate transfer. The first is Article III, which is cited by the defendant and has the 180-day time limit. The second is Article IV, which is officer-initiated and has a separate 120-day time limit. The facts of the case, and again, this isn't borne out by anything because we don't have the IAD in the record, but the facts of the case would justify an Article IV transfer, that is, an officer transferring it because he was moved to North Carolina and returned back within 60 days, which is clearly within the 120-day transfer. But again, that is an issue that is not before the court. The last thing I want to point out is the timeline the defendant has been moving. The other problem is all of this is kind of based on counterfactuals because, in fact, no one in the real world of when this is all happening to poor Mr. May ever had any occasion to figure out when should he go back to North Carolina because he didn't get finished with his Connecticut sentence until September, and by that time, North Carolina, correctly or incorrectly, didn't want him anymore because they only said, please register a detainer against him and don't release him before August 9th because before August 9th, we need him back. But none of that ever happened, and so no North Carolina court, no North Carolina authority, no North Carolina prison official ever had to actually make a determination, which they perhaps would have needed to make, if he was sent back, if he finished his Connecticut sentence earlier than August 9th and was sent back as to whether, oh, does he now get out completely or does he still have to serve until August 9th? Did we get this right? Did we get this wrong? None of that ever happened, and nobody ever made an authoritative determination of that fact. That's exactly correct. There was no reason to execute the detainer that North Carolina had on him. The last point I want to make, Your Honors, is that there is some question raised in the reply brief about the ability to rely on NCICs or criminal histories or rap sheets generally. I would just point to Government GA-143, which is the judgment and commitment from North Carolina, which says that the defendant had 119 days of time served credit. This is the original document. There may be errors generally and rap sheets generally, but this is the original document from the court itself that says the time the defendant received for time served was 119 days, not 180 days or any other calculation. If there are no other questions from the court, I thank you for your time and ask that the court affirm the judgment of the district court. Thank you. Just a few quick points, Your Honor. So even if we were advancing under a plain air standard of review on this question of law, we would submit that we would win. Judge Williams, at sentencing, heard Mr. May's testimony where he said he received time credit based on a waiver of extradition, and Judge Williams said, I quote, somehow magically, I'm aware of no authority of law where somehow magically, automatically you start receiving jail credit while serving time in another state. That is an incorrect statement of law. And did someone, and no one pointed, but no one pointed to Judge Williams and said that's an incorrect statement of law. In the transcript, both Mr. May and Attorney Hayes say that he received time credit for a waiver of extradition. The sentencing transcript doesn't necessarily get into the intricacies of North Carolina law, but I think this gets then to the factual question. And where the government does not provide an actual release date, and admittedly, they don't have to. There is no actual release date. That's the problem, right? The actual release date is the day on which you have to be let out of jail. But no one ever calculated that in this case in North Carolina, because they didn't need to. The best we got from North Carolina was his projected release date, which would be the actual release date if that official was in charge of anything, is August the 9th. Now maybe that was wrong. And maybe if he was sent back to North Carolina at some earlier point, someone would have figured out whether that's right or wrong. But no one ever in North Carolina had to determine an actual release date, because nobody in North Carolina ever released him, except the person who wrote the letter saying, if you keep him beyond August 9th, we don't need him anymore. So I think working from there, if I may, Your Honor, I see I'm out of time, but I have two points?  Okay. So I think the first thing is, the government needed a firmer foundation to extrapolate from. And the reason why is taking that detainer letter with the projected release date, and again, this is not going to happen in the vast majority of cases. This is not an owner's burden in every single case. But taking that detainer letter, if we... The question is, is it an owner's burden in this case, because the very fact that this is such a rare thing means who actually knows any of this stuff? I would actually say, Your Honor, it was a pretty... This is amazing. It was a fairly... Because he has an interest in knowing it, but he's not a lawyer, and he's not an expert, and I suppose the district court doesn't have to take his word for it. And we still don't know whether he's right or not. Well, I would say he proffered evidence in the form of his testimony that he waived extradition, and the government had an obligation to prove by a preponderance of the evidence the actual date of release. And even if there is no document that says the actual date of release, all we have is the projected date of release. And by extrapolating from that, using the time credit baked into that letter, the judgment is not before the court at sentencing. The government didn't produce that sentencing. Nobody mentioned 119 days' time credit at sentencing. It's not mentioned in the PSR. That is something that the government added into their briefing. And so we don't have the judgment at sentencing. All we're working off of is this detainer letter. And if we're working on just this detainer letter, you can see the stakes. If you just move that look-back date, two months. You move that look-back date to March 11, 2004, and you take the minimum sentence, which, to answer your question earlier, the minimum... Why are we changing the look-back date from January to March? Just to demonstrate, if you move the look-back date a little bit, you can see that the release date would have fallen before... It doesn't matter, but we're looking at this case. And the point is, Your Honor, is there are documented errors in time credit calculations, especially in the early age of computers. And those errors are replicated over and over again. Even look at the NCIC records. In the NCIC records, it says 119 days time credit, but it incorrectly says he was found guilty by a trial by a jury. And granted, that's not a dispositive fact here. It doesn't really matter for this sentencing. But it does show that there are mistakes that are replicated over and over again. And now a future probation officer can look at this and say, he was convicted by a jury of his peers instead of he pled guilty to this charge. And so there are mistakes that are replicated in that time calculation. But I guess the second point is, this ultimately goes to a matter of fundamental fairness. Time credit is a complicated concept. And on this particular guideline, we're always talking about time credit from 15 years ago. Mr. May does not have the burden of remembering the intricacies of his time credit calculation from 15 years ago or the interplay between the North Carolina and Connecticut sentence. That burden rested on the government, and it does not lessen the government's burden when Mr. May testifies that he waived extradition and the court doesn't credit it. The government, what they could have done here to firm up the foundation, just like... He said he waived extradition, but did he say what the legal effect of that was? Yes. Or did his lawyer say what the legal effect of that was? He says the legal effect of that was he received time credit on his North Carolina sentence. How much time credit did he receive? Time credit such that he was released in November of 2003 before the look-back date of January 11th. And I think, I mean, I'm happy to get into the theory of why he could have gotten that time credit, the theories of North Carolina law of what would have entitled him to that. But the point is, these issues were on the table. And the government proffered no evidence related to when he waived extradition, when the detainer letter was, the notice of rights, the raft of paperwork that comes with the interstate agreement on detainers. And without that evidence, this question of law that we're talking about, we're not able to argue it at sentencing or on appeal because there are different forks in the road with this legal argument based on the type of facts that would have been produced in those documents. So if the detainer and the waiver of extradition happen while he's on pretrial confinement on the Connecticut probation violation, that's a different question than if he's sentenced on the Connecticut probation violation and then the detainer is filed and then he waives extradition. That's a different legal question. And so we can't get there without the facts from the government. And the government was aware that there was a different criminal history category calculation. They were aware there were transfers from the PSR. That was filed in December of 2022, far ahead of the sentencing. And they provided no documentation about the transfer. Okay. Thank you. Thank you. Thank you both for your argument. We'll take the case under advisement.